We have two cases on today's docket. The first is cause number 22-60450. Tavita Farani v. Leslie File and Evanston Insurance Company. Is the appellant ready to proceed? You may. May it please the court. I'm Courtney Koger. I'm here this morning on behalf of Evanston Insurance Company. And this is primarily a matter of whether there was coverage under a particular excess umbrella insurance policy for an accident that occurred in 2014. There are four principal issues, well really three with the subsidiary before the court this morning. Number one, there was no coverage for this accident under the terms of the policy for several different reasons. Number two, there was no coverage for this accident because the traveler's policy, which was a primary policy, was never properly made controlling underlying insurance, which triggers into the coverage. And it was then reformed, the Evanston policy was reformed to make clear that the traveler's policy was not underlying insurance, which raises our issues of collateral estoppel based on a judgment from the federal court in Nebraska and the known loss doctrine. The gist of that arises because this accident occurred in 2014 on July 23rd. On July 23rd of 2014, Primetime Health, which was the employer of Ms. File, the driver, who was the defendant and who caused the car accident, had purchased a primary policy of auto insurance from travelers. They already had the Evanston policy, but the Evanston policy was not an umbrella or excess over any auto coverage at that time. After the accident, which resulted in several severe injuries, there were nine people in the van that Ms. File rear-ended. Two of them were life-flighted. A third was taken by ambulance to a major hospital. There were other injuries. After that accident had been reported to travelers, Primetime Health's broker asked Evanston to add the traveler's policy to the Evanston policy, making travelers controlling underlying insurance, which is a key term in the Evanston policy. Evanston was not told about the accident, even though Primetime Health knew it. Ms. File knew it. Travelers knew it. The broker knew it. Evanston did not. They agreed. They added the traveler's policy to the Evanston schedule of underlying insurance, and this case is the result of that. Well, they didn't just add it. Didn't they backdate it? They did. They backdated it to the effective date of the traveler's policy, which was actually July 22nd, the day before the accident occurred. It's important to note that Ms. File is not the party who contracted for this insurance. So when we are looking at Mississippi case law that talks about parties to a contract including an insurance policy are entitled to the benefit of their bargain, Ms. File didn't arrange for this insurance. She didn't pay for this insurance. She didn't even know this insurance existed. Primetime Health, which did pay for the insurance and arrange for it, has agreed and admitted judicially that that was an error to add the policy to the schedule. It should not have been done with the known loss doctrine, and we have a judgment from the federal court sitting in Nebraska that reforms the policy and removes that erroneous designation. Is that a stipulated judgment? It was stipulated, Your Honor. It was based upon the discovery, some of which was submitted, some of which is actually in the file in the record on appeal in this case based on admissions that were made. The district court below noted the admission from Primetime Health that the traveler's policy was not listed in the Evanston schedule of underlying insurance at the time of inception or at the time of the accident. So we know that the court was looking to that Nebraska judgment. But if you look at the language of the Evanston policy, it only applies to bodily injury that's covered by the defined term, controlling underlying insurance, that is occurrence-based and listed in the schedule of underlying insurance. Ms. File wasn't insured only if she was insured under a policy of defined term, controlling underlying insurance. There's an auto exclusion in the Evanston policy. There is no coverage under the Evanston policy for anything arising out of the use of an auto unless that bodily injury claim is covered by a policy listed in the schedule of underlying insurance. And then you look to the definition. And the definition of controlling underlying insurance is a policy that's listed in the schedule of underlying insurance or a renewal or replacement thereof. Then there's a definition. Was there a controlling underlying insurance designated? Not for this claim. Not for auto. There were other policies that were listed on the schedule of underlying insurance. The commercial general policy, for example, was listed from inception, was always controlling underlying insurance. But the original underlying insurance schedule, which is in the record, has N.A. in the business auto, commercial auto. There was no policy there. So you can't even say that the traveler's policy, which was added in September, two months after the accident but backdated, it didn't renew or replace a policy. There was no auto policy on the original schedule for the Evanston policy. So the reasons why you can't backdate, they're twofold. Number one, the named insured, who is the contracting party, says it was a mistake. We acknowledge it was a mistake. It shouldn't have been done. And the second reason is it runs afoul of the known loss doctrine. Now, it's true that there is not a Mississippi case that specifically adopts the known loss doctrine. This court has recognized it in other states' law, Texas being one of them, their decisions. And there are several cases cited in the record. I think we have a Michigan case. We have other cases. It's the whole principle of insurance, Your Honors. You don't insure yourself for something that has already happened that you know about. The one case from Mississippi that talks about the known loss doctrine is the Franklin County case, which has a very, very different set of facts. That involved some 1960s civil rights violations that plaintiffs then filed a lawsuit in 2008 over, after the underlying criminal had been reopened and investigated. And the argument was, well, somebody in the county knew that these bad things had happened back in the 1960s, so this was a known loss and it shouldn't be allowed to be insured. And the discussion of the court talked about both a prior acts exclusion in the policy but also the known loss doctrine and said, you know, when they applied for a policy that was in effect in 2008, nobody was thinking about there's a claim coming from something somebody did in 1964. But here we have a July 23 accident and it's August 13 is the request to, oh, let's add some coverage that would apply to that accident. And that is absolutely contrary to what insurance is for. Insurance is for risk. It's not to cover known losses. To primetime health. The purchase of the insurance policy occurred prior, I mean, the purchase occurred prior to the accident. The Evanston policy was purchased prior to the accident. The traveler's policy was purchased the day before the accident. But the additional cost to add the traveler's policy as controlling underlying insurance by listing it on the schedule of insurance, that was purchased after the accident. So the coverage or the attempt at coverage was made after the accident, and the accident was known. It's not like the accident happened and somebody had sent a letter saying, hey, add this in, and it just happened on the day after the accident. We know that the broker reported the accident and two days later asked to get the additional coverage for primetime health. So it was very clearly known and people were aware of it. So we violate the known loss doctrine. And the final issue that we did raise in our brief was that Ms. Feil was never an insured under the policy. That is based, we didn't want to be accused of waiving that issue. It's based on something that Judge Wingate said in his order denying the motion to dismiss. But if the court applies collateral estoppel or the known loss doctrine and finds that there was no controlling underlying insurance designation for the traveler's policy, that issue pretty much becomes moot. But I did want to mention it since we briefed it. I am happy to address any questions the court may have. Thank you, counsel. Subramanian? Subramanian, Your Honor. Subramanian. All right. You may proceed. May it please the court. My name is Mahesha Subramanian, and it is my privilege to represent plaintiffs' appellees Tavita Farhani, Tyler Bunting, and Michael Locke in this matter. For purposes of brevity, I will refer to the appellees as Farhani for the remainder of this argument. The court should affirm the district court's sound judgment that the Evanston umbrella policy covered Leslie Feil for the accident in question, thus covering the judgment that Farhani obtained against Feil. Mississippi law dictates that if a contract is clear and unambiguous, then it must be interpreted as written. If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways where one logical interpretation provides for coverage. Now, applying those principles here, if the umbrella policy that Evanston issued is ambiguous in any way, then Farhani prevails. The same goes if the umbrella policy unambiguously supports coverage. Evanston has to show this court that the language of the Evanston umbrella policy clearly and unambiguously excludes coverage. Evanston doesn't meet that burden. Evanston's main argument to this court is that the terms controlling underlying insurance and underlying insurance policy are like apples and oranges. But this is more a case of honey crisp apples and apples. If a document said that honey crisp apples are grown in Minnesota and that an apple is a fruit, one would understand the term honey crisp apple to mean a fruit grown in Minnesota. Evanston defines the words underlying insurance in the phrase controlling underlying insurance to include any other insurance available to the insured. And it is undisputed that the traveler's policy was available to Leslie File. But even if one treats controlling underlying insurance to mean schedule-listed insurance and nothing else, it is undisputed that Evanston added the traveler's policy to the schedule and backdated this event to include a period of time when the auto accident at issue here took place. Now, Evanston tries to get around this by invoking the principle res judicata and citing a post hoc stipulated judgment that Evanston extracted from primetime to unwind Evanston's backdating. Evanston never raised this res judicata argument before the district court. Also, stipulated judgments are not entitled to res judicata effect because they are not an adjudication on the merits. And I believe that speaks to one of the questions that you asked, Judge Douglas. Finally, neither Leslie File nor the Ferrani appellees were parties to the Nebraska litigation, so they had no opportunity to challenge the assertions that primetime and Evanston ultimately stipulated to in that judgment. So for all of those reasons, we think the court's analysis should just end there and affirm the district court's sound decision. I welcome any questions that the court may have. Thank you, counsel. Thank you. Rebuttal. Yes, thank you, Your Honor. Very briefly, I just want to direct the court to the definition of controlling underlying insurance in the policy because controlling underlying insurance is included in underlying insurance, but not all underlying insurance is controlling underlying insurance. The definition is, quote, controlling underlying insurance, end quote, means the coverage is afforded under insurance policies designated in the schedule of underlying insurance of this policy as controlling underlying insurance and any renewals or replacements of such policies. Quote, underlying insurance, close quote, also includes any other insurance available to the insured except specifically excess insurance. So underlying insurance is a broader term. Controlling underlying insurance is a narrow term within it. Controlling underlying insurance is the honey crisp apple, and apple is the broader term. And the other argument I would just briefly address is Evanston most certainly raised the Nebraska judgment and its preclusive effect in the district court, and we know that, and Judge Wingate acknowledged that it had been raised and addresses it in his opinion. So to say that Evanston did not raise that is inaccurate, unless the court has questions, that's all I have. Thank you, Counsel. Thank you, Your Honors. Mr. Saburama, did you leave paper?